***********
This matter was reviewed by the Full Commission based upon the record of the proceedings before Deputy Commissioner Ledford, along with the briefs and arguments on appeal. The appealing party has not shown good ground to receive further evidence or to amend the prior Opinion and Award. Accordingly, the Full Commission adopts and affirms the Deputy Commissioner's holding, with some modification, and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing on 17 May 2001 as:
 STIPULATIONS
1. The parties are subject to and bound by the North Carolina Workers' Compensation Act.
2. An employment relationship existed between the plaintiff-employee and the defendant-employer Sonopress, Inc. at all relevant times.
3. The plaintiff's average weekly wage was $497.29, yielding a compensation rate of $331.52.
4. The plaintiff claims that she injured her back in the course and scope of her employment on October 4, 1999, which the Defendants deny.
5. The parties submitted a set of medical records, consisting of 235 pages, which was marked and received as Stipulated Exhibit 1.
6. Subsequent to the hearing, additional medical records were received to be incorporated in Exhibit 1. The records from the NC Division of Vocational Rehabilitation were also received over Defendant's objection.
 ***********
Based upon the evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, the plaintiff was 38 years of age. She completed the 12th grade and has no further education.
2. At the time of the hearing, the plaintiff had been working for Sonopress for over 16 years. Sonopress makes and packages cassette tapes. The plaintiff's job involved material handling. Her department packaged the cassette tapes, which required regular lifting from floor to chest height of boxes weighing from two or three pounds up to 25 pounds.
3. The plaintiff had pre-existing back problems. In January 1989, she was seen at the emergency room for severe back and leg pain and came under the care of Dr. Lary Schulhof, a board-certified neurosurgeon with Mountain Neurological Center. Dr. Schulhof assessed her with a ruptured disk and underlying spondylolisthesis with bilateral pars defect, a congenital defect in the bone formation of the lower back. On January 20, 1989, Dr. Schulhof performed a total laminectomy at L5 and discectomy at L5-S1, with bilateral fusion.
4. The plaintiff was seen in January 1992 by Dr. Schulhof's colleague Dr. Weiss, after a fall from a horse. Dr. Weiss assessed a lumbosacral strain and took the plaintiff out of work for two weeks. After her follow-up appointment on February 13, 1992, Dr. Weiss released her to return to work.
5. The plaintiff returned to see Dr. Weiss on November 21, 1996 with complaints of neck pain. Films of the cervical area revealed a disc herniation at C6-7 and protrusion at C5-6. Dr. Weiss found no indication of spinal cord or nerve root compression and recommended continued conservative care, including chiropractic treatment. The plaintiff has been receiving chiropractic care going back to May 1991 and continuing into November 1999.
6. Following her recovery from the surgery of January 1989, the plaintiff maintained an active lifestyle. After her return to work, she continued working and did not miss work due to her back. She rode horses and played softball on a regular basis.
7. On October 4, 1999, the plaintiff had lifted a box of cassettes and was setting it on a table, when she felt pain in her lower back. The plaintiff continued working, but her back pain intensified and by the end of her shift, she was not picking up any boxes. The plaintiff informed her supervisor, John Ward, but he was very busy when she talked to him, and did not stop to fill out any paperwork that day.
8. The plaintiff reported to work the next day and worked about half a day. She told John Ward that her back was hurting and he sent her to the human resources office. There she talked with Roger Osborne, who then sent her for medical treatment at Weaverville Family Medicine. She was seen by the physician's assistant, and given some medications, which did not give her relief. She was subsequently sent back to Mountain Neurological Center.
9. On October 13, 1999, the plaintiff saw Dr. Weiss at Mountain Neurological Center. Dr. Weiss ordered an MRI and kept her out of work. The MRI showed a disc herniation at L4-5. Dr. Weiss decided to treat the plaintiff conservatively and continued to keep her out of work. By early January, 2000, as the plaintiff was showing no improvement, Dr. Weiss recommended that the plaintiff consider a discectomy, and a possible fusion at a later date.
10. On March 3, 2000, Dr. Weis, assisted by Dr. Schulhof, performed a right L4-5 discectomy. Following this surgery, the plaintiff's leg pain was relieved temporarily, but she continued to have a lot of lower back pain. Due to her ongoing complaints, a repeat MRI was done in June, and showed a recurrent disc rupture at L4-5. On July 10, 2000, Dr. Schulhof performed surgery for the recurrent disc rupture at L4-5, with removal of the disc fragments.
11. Post-surgery, the plaintiff participated in physical therapy. She had slow recovery, and continued to experience back pain. At her September 13, 2000 visit, Dr. Schulhof discussed with the plaintiff possible options for returning to work. He advised her that she should avoid any job that required repetitive lifting or heavy lifting, twisting or bending, i.e. movements which could aggravate her back condition. Dr. Schulhof also ordered a functional capacity evaluation (FCE) to determine her capabilities.
12. Dr. Schulhof kept the plaintiff out of work until October 10, 2000. At that visit, he released her to return to light duty work with no lifting over 10 pounds and limited bending, twisting and stooping. The plaintiff attempted to return to work, but went home the same day, due to her back pain. The evidence fails to show that the employer had suitable employment available at that time.
13. The plaintiff saw Dr. Schulhof again on November 15, 2000, at which time he ordered another MRI and took her out of work. He continued to treat the plaintiff conservatively. By February 2001, he ordered additional tests, a myelogram and CT. After reviewing these test results, Dr. Schulhof discussed with the plaintiff a possible further back surgery.
14. On February 23, 2001, Dr. Schulhof performed a fusion with instrumentation; pedicle screws and a rod were inserted. This surgery provided the plaintiff with relief from her back pain and she did well in her recovery.
15. By May 5, 2001, the treating physicians allowed the plaintiff to return to light duty work, limited to 8 hours per day and 25 pounds of lifting. At the time of the hearing, the plaintiff had returned to work the prior week.
16. The testimony of the plaintiff regarding the onset of her back pain is found to be credible. The greater weight of the evidence establishes that she sustained a specific traumatic incident on October 4, 1999, when she had a sudden onset of back pain while setting down a box of cassettes.
17. Dr. Weiss and Dr. Schulhof, the treating neurologists, both testified in this case. Their testimony establishes that, although the plaintiff had significant pre-existing back problems, she had been active and for the most part symptom-free until the incident of October 4, 1999. This incident aggravated her pre-existing back condition, and resulted in the need for additional surgeries.
18. The evidence establishes that due to her incident of October 4, 1999, and the resulting back injury, the plaintiff was unable to earn wages in the same or any other employment from October 6, 1999 through May 12, 2001.
19. Neither of the treating neurosurgeons has rated the plaintiff's back for any permanent impairment and so no findings can be made in this regard.
20. The plaintiff received both short-term and long-term disability benefits during the time she was out of work. The plaintiff paid a portion of the premium for these benefits and the evidence fails to establish that defendants would be entitled to a credit for these benefits paid.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. The greater weight of the evidence establishes that on or about October 4, 1999, the plaintiff sustained a specific traumatic incident arising out of and in the course of her employment when she experienced an onset of back pain as she was setting a box of cassette tapes on a table. As a consequence, she aggravated her pre-existing back condition. N.C. Gen. Stat. § 97-2(6).
2. As a result of the specific traumatic incident of October 4, 1999, the plaintiff has needed medical treatment, including several surgeries. Defendants are responsible for payment for all such reasonably necessary medical treatment. N.C. Gen. Stat. §§ 97-2(19), 97-25.
3. As a result of the specific traumatic incident of October 4, 1999, the plaintiff was unable to earn wages in the same or any other employment and was temporarily totally disabled from October 6, 1999 through May 12, 2001. Defendants are responsible for paying the plaintiff compensation during this period at the rate of $331.52 per week. N.C. Gen. Stat. § 97-29.
4. The plaintiff may be entitled to additional compensation for any permanent impairment to her back, but such assessment has not been made or provided as part of this case. Therefore, this issue remains open. N.C. Gen. Stat. § 97-31(23).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay for all reasonably necessary medical treatment incurred by the plaintiff due to the specific traumatic incident of October 4, 1999, including the back surgeries performed by Dr. Weiss and Dr. Schulhof.
2. Defendants shall pay the plaintiff compensation at the rate of $331.52 per week from October 6, 1999 through May 12, 2001 as temporary total disability compensation. Such benefits have accrued and shall be paid in a lump sum.
3. A reasonable attorney's fee of twenty-five percent of the plaintiff's recovery herein is approved for her counsel. Twenty-five percent of the lump sum due the plaintiff shall be deducted therefrom and paid directly to her attorney.
4. Defendants shall pay the costs of this appeal.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER